(94 South. 562)

**BLOCH BROS. v. LIVERPOOL & LONDON & GLOBE INS. CO. et al.    (2 Div. 800.)**

(Supreme Court of Alabama.    Oct. 26, 1922.
Rehearing Denied Dec. 7, 1922.)

**I. Garnishment ☞38—Garnishee's indebtedness on a nonnegotiable instrument.**

Where garnishee insurance company, through its manager authorized to do so, gave to defendant S., who had suffered a loss under a policy issued by garnishee, an instrument addressed to garnishee directing it, if the receipt thereon be signed by all parties in interest, to pay to S. $1,900, in full settlement and discharge of all claim for such loss, the nonnegotiable instrument, on S. signing the receipt thereon, without acceptance or other act of the company, satisfied the claim for loss, and evidenced an obligation of the company to pay him, continuing, unless paid, till assignment to another, as authorized by Code 1907, § 5158.

**2. Garnishment ☞112—Liability dependent on status at time of service of writ unaffected by subsequent payment.**

Right of plaintiff against garnishee depends on the status when writ was served, unaffected by subsequent voluntary payment to defendant or a third person.

**3. Garnishment ☞148—Garnishee under answer of no indebtedness cannot show assignment.**

Garnishee, under an answer merely denying indebtedness, cannot show assignment of defendant's claim, as it could on answer under Code 1907, § 4328. alleging claim of title to the debt by a third person.

**4. Assignments ☞2—Efficacy of assignment held governed by law of forum.**

Efficacy of assignment between citizens of Alabama of a nonnegotiable instrument originating in another state is, in a suit in Alabama, governed by the law of the forum.

On Rehearing.

**5. Garnishment ☞95—Payment after service of writ on agent does not affect liability.**

Garnishee's liability continues unaffected by payment after the service of the writ, though the service of the writ was on an agent.

**6. Appeal and error ☞130—Judgment discharging garnishee will support appeal.**

Judgment in garnishment, though not in proper form, will support appeal; it discharging garnishee.

Appeal from Circuit Court, Dallas County; S. F. Hobbs, Judge.

Action by Bloch Brothers against C. E. Shuptrine; the Liverpool & London & Globe Insurance Company, garnishee. From a judgment on contest of the answer of the garnishee, plaintiff appeals. Reversed and remanded.

The judgment entry in the trial court is as follows:

"On the trial of the issue made up on this day between plaintiffs and garnishee, the court renders judgment in favor of garnishee, and garnishee is discharged on its answer.

"The issue formed in this cause was as follows: That the plaintiff alleges that the answer of the garnishee is untrue in this respect: That the garnishee was indebted to the defendant at the time of the service of the writ of garnishment and is liable to the plaintiff thereunder, and that the garnishee took issue on this allegation."

M. E. Frohlich, of Selma, for appellant.

The instrument made and payable in Louisiana, the liability of the drawer must be determined by the law of that state. 6 Ala. 12, 41 Am. Dec. 33; Rev. Civ. Code La. art. 2643. An assignment can be made effective to third persons only where notice of the transfer has actually been given to the debtor. 43 La. Ann. 50, 8 South. 702, 12 L.

R. A. 302; 36 La. Ann. 611; 32 La. Ann. 521; 15 La. Ann. 654. The garnishee answered not indebted, an issue was formed on the question of indebtedness vel non, and evidence of transfer was inadmissible. 52 Ala. 16. The draft was not the debt itself; it was not a final payment; and there could be no transfer until accepted by the drawee. 43 La. Ann. 50, 8 South. 702, 12 L. R. A. 302. The garnishee cannot have its own agent simply say that a debt has been transferred for value, and avoid payment on such statement, where no claimant is suggested in the pleading. 62 Ala. 68; 11 Ala. 151; 13 Ala. 291. The judgment is certain and definite, or capable of being made so by construction. 23 Cyc. 671; 11 Ala. 508; 69 Ala. 332; 86 Ala. 395, 5 South. 452.

Steiner, Crum & Weil, of Montgomery, and Reese & Reese, of Selma, for appellees.

The draft was assigned by Shuptrine for value on January 5, 1921; the garnishment writ was served on the agent of appellee on January 6, 1921. Under such circumstances the assignment has precedence over the garnishment, although the garnishee had no notice of the assignment until after garnishment was served. 50 Ala. 182; 57 Ala. 368; 104 Ala. 252, 16 South. 11; 12 Ala. App. 546, 67 South. 794; 34 Okl. 243, 124 Pac. 758, L. R. A. 1916E, 81; 110 N. W. 1059. The garnishee can never be made liable to the plaintiff in garnishment, unless the defendant in the main suit could, at the time the writ was served, have maintained an action against the garnishee. 161 Ala. 567, 49 South. 871; 136 Ala. 217, 33 South. 935; 12 Ala. App. 547, 67 South. 794; 2 Ala. App. 415, 56 South. 247. The law of Louisiana is not applicable. 106 Ala. 377, 17 South. 545; 152 Ala. 178, 44 South. 567; 149 Ala. 293, 42 South. 855. The garnishee not admitting indebtedness, and having made payment in entire good faith and in ignorance of the service of the writ, Fowler v. Williamson, 52 Ala. 16, is not applicable, and the appellee should be entitled to prove any facts which tended to show to whom the money involved really belonged. 2 Ala. App. 419, 56 South. 247. The draft drawn on appellee was accepted by defendant in payment of his claim, and such payment is sufficient to defeat a subsequent garnishment. 9 Port. 76; 28 C. J. 148; 17 R. I. 746, 24 Atl. 777, 19 L. R. A. 475; 19 R. I. 300, 33 Atl. 444; 130 Md. 389, 100 Atl. 774. The judgment entry is not a formal adjudication within the meaning of our decisions. 101 Ala. 186, 13 South. 43, 46 Am. St. Rep. 117; 197 Ala. 262, 72 South. 525; 17 Ala. App. 412, 85 South. 871.

McCLELLAN, J. The appellant partnership was awarded a money judgment against C. E. Shuptrine, the action being commenced by garnishment in which the appellee insurance company was made garnishee. The gar-nishee answered not indebted, and the answer was contested. Motion by plaintiffs to require oral answer was granted; but the order of the court seems not to have been carried into effect. The court, on hearing on evidence, discharged the garnishee. Shuptrine, having suffered a fire loss under a policy issued by the Liverpool & London & Globe Insurance Company, received from the company, through the hand of its local agent, Helmer, the following written instrument (presently unimportant features being omitted):

"New Orleans, La. Jan. 3, 1921.
"[Seal.]   Loss No. 54907.
"If the receipt on the reverse side is properly signed by all parties at interest
"Pay to C. E. Shuptrine nineteen hundred seven and no/100 dollars, same being in full settlement, compromise and discharge of all claims and demands for loss or damage by fire, hail or windstorm on date indicated in receipt referred to.
"To Liverpool & London & Globe Insurance Company, Limited, New Orleans, La.
"R. H. Alcock, Manager."
Indorsed:   "Paid, Whitney-Central Nat'l Bank, New Orleans, La., Jan. 7, 1921. Draft Clerk."

Reverse side:

"Received of the Liverpool & London & Globe Insurance Company, Ltd., nineteen hundred seven and no/100 dollars in full settlement, compromise and discharge of all claims and demands for loss occurring on the 18th day of December, 1921, to the property insured by its policy No. 842698 issued at its Selma, Ala., agency, and said policy is hereby reduced accordingly.
"C. E. Shuptrine, L. S."

This paper was delivered to Shuptrine at Selma, Ala., on January 5, 1921, and his signature made thereon as indicated. Helmer testified that on January 5, 1921, Shuptrine "by indorsement assigned the check (i. e. the instrument set out above) to the City National Bank of Selma, Ala., and turned it over to me to be delivered to the bank." Plaintiffs' objections, to be later considered, being overruled, Helmer further testified:

"There was no agreement with the company, but there was an understanding with the City National Bank, Mr. Shuptrine, and me, that when it came it was to be turned over by me for Mr. Shuptrine to the bank, and the bank was to pay me out of the draft a claim of about $250 which I had against Mr. Shuptrine, and retain the balance of the draft on account of a debt which the bank held against Mr. Shuptrine. This was done, and the whole transaction was completed in accordance with the understanding on the evening of the 5th of January, 1921, during banking hours, and before the garnishment was served. The draft was turned over to Mr. Shuptrine and accepted by him on the 5th of January in full settlement of the loss and all claims he held against the company under the insurance policy. All this was a personal agreement of mine and not an agreement made for the company. * * * I

have no authority to accept drafts drawn on the company. I did not accept the draft in question; that is, the draft or check given .Mr. Shuptrine."

On the morning of January 6, 1921, the plaintiffs (appellants) sued out the mentioned writ of garnishment against the insurance company, and it was then executed by service upon Helmer, the authorized agent, for that purpose, of the insurance company.

On January 7, 1921, the insurance company paid the sum called for in the instrument; the Whitney-Central National Bank at New Orleans indorsing the fact of payment on the instrument as appears ante.

W. H. Hackney, special agent for the insurance company, testified that when advised by Helmer of the circumstances stated he wired the insurance company at New Orleans "in an effort to stop payment of the draft in question, but was advised that the draft had already been paid that day." This was the entire evidence.

It is to be noted that the controversy is between the insurance company and the appellants, neither the Selma Bank nor Helmer being parties to the cause.

[1] That the instrument sent by the insurance company, through its local agent at Selma, Ala., to Shuptrine, was not a "negotiable instrument," is a proposition not contested by the parties. While the instrument was not a "negotiable instrument," yet it was in nature similar to a draft drawn by the drawer, upon the drawer as drawee, in favor of a third person. It possessed some of the characteristics of a "draft" in which the drawer and drawee were the same person or entity. It was signed by the manager, the agent, of the drawer whose authority to do so is not questioned. It was made payable to C. E. Shuptrine upon the contingency that he should sign "the receipt on the reverse side" of the paper. The payee signed this "receipt." Thereupon the instrument became the unconditional promise of the insurance company to pay C. E. Shuptrine on demand the sum stated therein—so without necessity for acceptance by the drawer-drawee or other act or assurance thereby to constitute it a binding obligation between it and Shuptrine. In executing the "receipt on the reverse side," consistent with the only contingency imposed by the instrument, Shuptrine not only acknowledged the receipt by him of the sum stated, but he also gave the insurance company an unqualified acquittance to the extent that sum reduced the policy designated by number therein. His acceptance of the instrument and the execution of the "receipt" was with the express effect that "said policy is *hereby* reduced accordingly" (italics supplied). According to the terms of the instrument, including the "receipt" as thus executed, and the undisputed testimony of the witness Helmer that Shuptrine accepted the instrument "in full settlement" of his claim under the policy, the effect of the instrument's acceptance thus made and thus shown operated thereupon, on January 5, 1921, to satisfy the insured's demand for fire loss within the protection of the policy. Lee v. Green, 83 Ala. 491, 3 South. 785; Keel v. Larkin, 72 Ala. 493, 501, 502.

[2, 3] It is manifest that at the time the writ of garnishment was served on January 6, 1921, the insurance company was indebted through the assurance given by the instrument set out above. When delivered to Shuptrine by the company's agent at Selma, and the "receipt" was executed by Shuptrine, the instrument evidenced an indebtedness to him. It was his chose in action. The obligation of the garnishee to pay him continued unless legally assigned by him (Code, § 5158), the asserted satisfaction of the obligation not having been accomplished until subsequent to the service of the writ of garnishment. The relative rights of the plaintiffs and of the garnishee depend upon the status existing when the writ of garnishment was served. Feore v. Mississippi Transp. Co., 161 Ala. 567, 49 South. 871, among others. Payment to the defendant in the main cause or to a third person after service of the writ will not avert the garnishee's liability otherwise shown. 20 Cyc. p. 986; Fowler v. Williamson, 52 Ala. 18, 19. This garnishee's answer denied any indebtedness, present or prospective, to Shuptrine. As disclosed above by the cross-examination of the witness Helmer, the insurance company's theory was that Shuptrine had assigned the obligation before the writ of garnishment was served, thereby extinguishing the relation of debtor and creditor between the garnishee and Shuptrine. Rowland v. Plummer, 50 Ala. 182, 194. It was held by this court, in the opinion of Brickell, C. J., in which Justice Judge concurred (constituting a quorum of the court) that the garnishee's proffered evidence of a transfer or assignment of an indebtedness shown to be due from the garnishee to the defendant in the main action was inadmissible on objection except, solely, in virtue of an answer by the garnishee suggesting that another or others claim the beneficial ownership of the debt by assignment or transfer from the garnishee's creditor, the defendant in the main action. This pronouncement was made in exposition of the provisions of section 2977 of the Code of 1867, and related sections. So far as presently important section 4328, and allied sections, of the Code of 1907, is the same in effect as its predecessor in the Code of 1867. The re-adoption of the statute brings it down to us impressed with the construction accorded it in the opinion of Brickell, C. J., cited ante. The basic conception of the procedure thus exacted, in appropriate circumstances, is that the defendant's creditor in attachment or garnishment has a right to contest the efficacy of the assignment with the assignee. So

far as has been discovered, the view then expressed has not been qualified in any degree. That deliverance cannot be distinguished by reference to the fact that in the case then presented (Fowler v. Williamson, supra) the answer admitted an indebtedness. True the statute then as now, carried the qualification that its rule was applicable to cases where the answer admitted an indebtedness. Nevertheless the court pronounced, in Fowler v. Williamson, to the unmistakable effect stated. The court, at this time, does not feel warranted in denying controlling authority to that exposition of the statute.

[4] The appellants interposed, seasonable objection to the reception of the testimony by the witness Helmer (on cross-examination) designed to show the assignment or transfer of the instrument under the circumstances he was permitted to recite. This was error, the matter being outside of the issues resulting from the garnishee's answer of unqualified denial of indebtedness to defendant. In view of the trial to follow reversal and in response to argument in the brief for appellants, it is proper to observe that the. efficacy vel non of the assignment of this chose in action to the City National Bank of Selma, Ala., the place of Shuptrine's residence, is to be determined by the law of the forum (Alabama) and not by the law of the state of Louisiana. 1 Wharton's Conflict of Laws (3d Ed.) § 363b.

For the error indicated, the judgment is reversed, and the cause is remanded.

Reversed and remanded.

ANDERSON, C. J., and SOMERVILLE and THOMAS, JJ., concur.

### On Rehearing.

McCLELLAN, J. Upon reconsideration of the pertinent doctrine of Fowler v. Williamson, supra, the court remains convinced of the propriety of its application to the cause under review. See Rood on Garnishment, § 371, and note 32. That author also rests portions of the text in sections 317, 357, upon Fowler v. Williamson, supra. The objections stated on the trial by the plaintiffs to the testimony designed to show Shuptrine's asserted transfer of the quoted instrument to the Selma Bank was expressed in such specific terms as to invoke the doctrine of the cited case, requiring the pronouncement of error in the trial court's ruling adverse to the objection. This court has not undertaken to pass upon the validity or efficacy of the asserted assignment. The question can only be seasonably contested when the issue is appropriately presented. That issue was not before the trial court when this evidence of assignment was erroneously admitted.

Rowland v. Plummer, 50 Ala. 182, Winslow v. Bracken, 57 Ala. 368, and Jones v. Lowery Banking Co., 104 Ala. 252, 16 South. 11, cited on appellee's briefs, are not applicable to the question presented by the objections taken to the admissibility of the testimony relating to the asserted assignment of the instrument involved; so for the reason that in them claimants appeared and contested the issue with the plaintiff, whereas in this instance no claimant either appeared or was brought in.

This garnishee's answer was an unqualified denial of indebtedness to the defendant (Shuptrine). The issue it tendered did not include the matter of asserted assignment of the instrument in question. Fowler v. Williamson, supra. When appropriately presented, a contest between the plaintiff and a claimant is "in many respects a distinct and independent suit." Ex parte Opdyke, 62 Ala. 68, 70. Under the practice thus established, a garnishee cannot claim or assert the option of litigating with the plaintiff the validity or efficacy of an assignment, made by the defendant to a third party prior to service of the writ of garnishment; the issue tendered by a general denial of indebtedness to defendant not comprehending the matter of such an assignment by the defendant. Authorities, supra.

[5] Whatever may be the rule elsewhere prevailing, it is settled in this jurisdiction that "a voluntary payment of the debt by the garnishee, after service of the garnishment, will not defeat it. Its service creates a lien on the debt, which continues until it is dissolved by the discharge of the garnishee, under the order of the court from which it issues." Payment by a garnishee, after writ served, is at "his own peril"; and, if the garnishee "sustains loss, it results from his own neglect." Calhoun v. Whittle, 56 Ala. 138, 143; Rood on Garnishment, § 192. No distinction can be taken between garnishees upon whom service is had through agents and those personally served. The perfection of a valid service of the writ of garnishment upon an agent of the garnishee is as presently effective as if the process had been served upon the garnishee personally. The payment of any sum to the Whitney Bank by the garnishee on January 7th, after the service of the writ on Helmer on January 6th, is not a factor in the cause.

[6] It is urged for the first time on rehearing that no such judgment was rendered as would support an appeal. The memorial of the court's action on the trial below is not in proper form; but, following the view prevailing on the appeal in Ober & Son Co. v. Phillips-Burttoff Mfg. Co., 145 Ala. 625, 40 South. 278, this contention cannot be approved. The recital of the court's action in this instance discharged the garnishee, if not reversed.

The rehearing is denied.

ANDERSON, C. J., and SOMERVILLE and THOMAS, JJ., concur.